**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 20 EAP 2023 |
| | : | |
| Appellee | : | Appeal from The Judgment of |
| | : | Superior Court entered on |
| | : | 12/13/2022 at No. 2192 EDA 2021 |
| v. | : | affirming the Judgment of Sentence |
| | : | entered on 9/28/2021 in the Court of |
| | : | Common Pleas, Philadelphia |
| OMAR SAUNDERS, | : | County, Criminal Division at No. CP- |
| | : | 51-CR-0000208-2021. |
| Appellant | : | |
| | : | ARGUED: March 5, 2024 |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: November 20, 2024**

In this discretionary appeal, we consider the legality of a police officer's warrantless seizure of an unsecured gun in plain view in an open car lawfully stopped for traffic violations. As detailed below, we conclude the seizure was constitutional under the plain view doctrine. Accordingly, we affirm the order of the Superior Court upholding the denial of suppression of the firearm.

On the evening of November 18, 2020, Officer Matthew Ibbotson and his partner, Officer Washington, were patrolling in a marked police car in the area of the 2500 block of West Indiana Avenue in Philadelphia. Officer Ibbotson had made approximately fifty to sixty gun-related arrests in the area, about seventy percent of which had resulted from car stops. It is a residential area that is "pretty violent" and has "[a] lot of shootings." *See* N.T. Suppression Hearing, 5/20/21, at 8-11.

At approximately 6:55 p.m., Officer Ibbotson saw a silver Honda with heavily tinted windows parked illegally. When the officer stopped at a stop sign, the Honda pulled in front of him and then made a right-hand turn without signaling. Officer Ibbotson stopped the car for violations of the Vehicle Code.[1] He approached the car on the driver's side, and Officer Washington approached the vehicle on the passenger's side. Saunders was driving the car alone. As Saunders sat in the driver's seat with the driver's side window down, Officer Ibbotson asked him for his license, registration, and insurance. Initially, Saunders reached toward his back left pants pocket and said his paperwork was in his back pocket. He then said it was in his inside pocket on his right side and reached in that direction. The officer asked him if he had any weapons, and Saunders said no. Saunders then reached with his right arm toward the right side of the car while simultaneously dropping his left arm down by his feet and moving it "like he was pushing something" under the driver's seat. *Id.* at 14. Officer Ibbotson looked through the front windshield and saw the handle of a gun under the driver's seat. The officer was "[v]ery" certain he saw a gun. *Id.* at 15. Concerned for his own safety and that of his partner, Officer Ibbotson used a hand signal to notify Officer Washington about the gun.

Officer Ibbotson had Saunders turn off his car and hand over his keys. The officer ordered Saunders out of the car, placed him in handcuffs, and frisked him. He took Saunders's driver's license from his wallet and asked him if he had a permit for the gun. Saunders replied, "[N]o." *Id.* at 16. He said the car belonged to his wife, and that she

---

[1] *See* 75 Pa.C.S. §4524(e)(1) ("No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle."); 75 Pa.C.S. §3353 (listing circumstances under which street parking is prohibited); 75 Pa.C.S. §3334(a) ("Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.").

lived right around the corner. Officer Ibbotson then placed Saunders in the back of his police car for the safety of the officers. He returned to the stopped car. Officer Ibbotson told Washington, "He was like playing with the thing down here – trying to push it under. And I looked." Exhibit C-2 (body-worn camera footage from Officer Ibbotson), at 04:10. Officer Washington responded, "I saw his leg moving." *Id.*, at 04:13. At that point, Officer Ibbotson, from outside of the car on the street, reached into the car through the open driver's side door, recovered the gun from under the front of the driver's seat, and immediately disabled the weapon. It was a 40-caliber handgun loaded with fourteen bullets. The gun was stolen.

Saunders filed a motion to suppress the gun under the Pennsylvania and United States Constitutions. At the suppression hearing, the Commonwealth presented the testimony of Officer Ibbotson and body-worn camera footage from both officers. Saunders did not present any evidence. But he explained "the basis of the motion is that" Officer Ibbotson "did not have the legal justification to reach into the car and seize the firearm at the time that he did." N.T. Suppression Hearing, 5/20/21, at 6. In Saunders's view, under this Court's then-recent decision in *Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020), "police officers need a warrant to search . . . **and seize** anything from a car unless there are exigent circumstances[.]" *Id.* at 36 (emphasis added); *see id.* at 37 ("*Alexander* says that officers need warrants to search **and seize** items from the car.") (emphasis added).

The suppression court held the motion under advisement and permitted the parties to brief the matter. In his filing, Saunders reiterated his belief that, under *Alexander*, the "officers were required to obtain a warrant prior to seizing the firearm from the vehicle." Saunders's Letter Brief in Support of Motion to Suppress, 6/14/21, at 3. In reply, the Commonwealth argued the seizure was proper under the plain view doctrine, in part "due

to the lack of advance notice and opportunity to obtain a warrant and the inherent danger of traffic stops and guns." Commonwealth's Brief in Opposition to Motion to Suppress, at 3 (undated).

Ultimately, the suppression court denied the motion. In its opinion, the suppression court explained a police search conducted without a warrant is generally unreasonable and therefore unconstitutional unless an established exception to the warrant requirement applies, and one such exception is the automobile exception. The court noted that under the Pennsylvania Constitution, "a warrantless search of a vehicle under the automobile exception is only permissible where there exists 'both probable cause and exigent circumstances.'" Trial Court Op., 4/21/22, at 13, *quoting Alexander*, 243 A.3d at 207. In addition, the court noted "[t]he plain view doctrine 'permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object.'" *Id.* at 14, *quoting Commonwealth v. Heidelberg*, 267 A.3d 492, 504 (Pa. Super. 2021).[2]

Here, the court opined, there was probable cause and exigent circumstances satisfying the automobile exception to the warrant requirement:

> Under the totality of the circumstances, . . . Officer Ibbotson had probable cause to conduct a warrantless search of the vehicle [Saunders] was driving. Officer Ibbotson observed [Saunders] drop his left arm to the side and move it back and forth. This prompted Officer Ibbotson to shine

---

[2] The plain view doctrine is an exception to the warrant requirement for a seizure. *See Horton v. California*, 496 U.S. 128, 134 (1990) ("If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches."); *United States v. Green*, 106 F. 4th 368, 378 (4th Cir. 2024) ("The plain-view doctrine is an exception to the Fourth Amendment warrant requirement for a seizure, not a search.") (emphasis omitted). Accordingly, the plain view doctrine is also referred to as the "plain view exception." *See, e.g.*, *Alexander*, 243 A.3d at 185; *Commonwealth v. Wilmer*, 194 A.3d 564, 568 (Pa. 2018).

his flashlight through the front windshield of the vehicle, at which point he saw a firearm under the driver's seat. Officer Ibbotson then learned from [Saunders] that he did not have a license to carry a firearm, meaning he had sufficient information to believe that [Saunders] was in illegal possession of the firearm and had therefore violated the Uniform Firearms Act. Officer Ibbotson therefore also had probable cause to arrest [Saunders].

Additionally, under the totality of the circumstances, . . . exigent circumstances also existed to justify the warrantless search. [Saunders] was stopped in a high crime area in a high crime city and was observed making furtive movements with his left hand in an apparent attempt to conceal the firearm that was later seen by Officer Ibbotson under the driver's seat. Officer Ibbotson thus reasonably believed his safety was in danger, which aligned with the general concerns he expressed over conducting car stops at the suppression hearing. There was therefore a compelling need for Officer Ibbotson to take official action and recover the firearm without waiting the significant amount of time it could have taken for a warrant.

*Id.* at 16-17.

The court also concluded each prong of the plain view doctrine was established:

Officer Ibbotson was at a lawful vantage point when he saw the back handle of the firearm, as he was outside of the vehicle and looking in through the front windshield. Officer[] Ibbotson's prior training and experience with gun-related arrests from car stops allowed him to perceive [Saunders] making furtive movements with his left arm, which led him to shine the flashlight and plainly observe a firearm under the driver's seat. Finally, Officer Ibbotson had lawful access because the traffic stop of [Saunders] was lawful due to [Saunders's] commission of several violations of the . . . Vehicle Code, and, as previously discussed, a warrantless search of the vehicle was permissible under the automobile exception.

*Id.* at 17-18.

Following the denial of his suppression motion, Saunders proceeded to a bench trial before a different judge. The trial court convicted him of persons not to possess firearms, carrying a firearm without a license, and carrying a firearm on a public street or public property in Philadelphia. *See* 18 Pa.C.S. §§6105, 6106, and 6108. The court sentenced him to an aggregate term of three and a half to seven years' imprisonment. Saunders appealed.

The Superior Court affirmed the judgment of sentence. Initially, the panel held Saunders's claim the gun should have been suppressed as the fruit of an illegal arrest was waived because he did not preserve this claim in the suppression court but rather raised it "for the first time on appeal[.]" *Commonwealth v. Saunders*, 2022 WL 17588739 at *3 (Pa. Super. 2022) (unpublished memorandum). Alternatively, the panel ruled that when the police ordered Saunders from the car and handcuffed him, he was not placed under arrest but rather subjected to a lawful "investigative detention." *Id.* at *3 n.6.

Most relevant here, the panel held suppression was properly denied under the plain view exception to the warrant requirement. Regarding Saunders's argument *Alexander* "require[s] the Commonwealth to demonstrate exigent circumstances before invoking the plain view exception in the context of automobile searches[,]" the panel determined this "same argument" was "rejected" in *Commonwealth v. McMahon*, 280 A.3d 1069 (Pa. Super. 2022), which it was bound to follow. *Id.* at *4. Moreover, the panel found "unavailing" Saunders's contention that "the Commonwealth failed to establish the requirements of the plain view exception." *Id.* at 4. The panel observed Saunders did not dispute the first two prongs were satisfied and accordingly found them to be met. It further held the police had a lawful right of access to the gun in satisfaction of the third prong:

> With regard to the final prong, we find that the officer had a lawful right to access the interior of [Saunders's] vehicle after [Saunders] lied about the presence of the firearm, was observed attempting to hide it, and admitted that he did not possess a valid firearm permit. . . . These factors combined to create probable cause suddenly and without any advance warning that [Saunders] or his car would be the target of a police investigation. . . . Therefore, since Officer Ibbotson lacked advance notice and an opportunity to obtain a warrant before commencing a search, he had a lawful right of access to the interior of [Saunders's] vehicle to recover the evidence that was lying in plain view and, thereby, secure officer safety.

*Id.* (internal quotation marks and citations omitted). Consequently, the panel "conclude[d] that the seizure of the firearm was lawful[,]" and "the trial court did not err when it denied suppression of the firearm." *Id.* at *5.

We granted Saunders's petition for allowance of appeal, which raised the following issue: "Does this Court's holding in [*Alexander*] require a fact specific assessment to determine whether exigency exists to provide officers with a right of access to the interior of an automobile under the plain view exception to the warrant requirement?" *Commonwealth v. Saunders*, 301 A.3d 865 (Pa. 2023) (per curiam).

"[O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). "Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Dunkins*, 263 A.3d 247, 252 (Pa. 2021), *quoting In Interest of A.A.*, 195 A.3d 896, 901 (Pa. 2018). "Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence." *Commonwealth v. Laatsch*, 661 A.2d 1365, 1367 (Pa. 1995), *quoting Commonwealth v. O'Shea*, 567 A.2d 1023, 1028 (Pa. 1989). Our scope of review is limited to the record of the suppression hearing. *See Yandamuri*, 159 A.3d at 516. Additionally, we may "consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole." *Dunkins*, 263 A.3d at 252, *quoting A.A.*, 195 A.3d at 901.

Saunders argues the Superior Court erred in affirming the denial of suppression. As he did below, Saunders concedes the first two prongs of the plain view doctrine were established. Yet, he emphasizes the plain view doctrine also requires the police to have a lawful right of access to the contraband, and this requirement applies to cars. He contends that pursuant to *Alexander*, lawful access to a car requires either a warrant,

probable cause and exigent circumstances, or some other exception to the warrant requirement. He asserts *Alexander* demands a fact-specific, case-by-case analysis of whether there are exigent circumstances, and the inquiry is not amenable to *per se* rules. He claims exigent circumstances are not necessarily established simply because the police lacked advance notice and an opportunity to obtain a warrant before probable cause arose. In his view, whether the police could have obtained a warrant must be considered. He contends exigent circumstances were lacking here where he was already secured in police custody at the time the gun was seized. He argues as well that especially in light of advanced communication technology, it is wrong to assume the police lack an opportunity to get a warrant when probable cause arises suddenly during a traffic stop.

The Commonwealth responds that suppression was properly denied and the Superior Court's order should be affirmed. Initially, the Commonwealth argues the police lawfully seized the gun as a protective measure pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983) (authorizing protective search of passenger compartment of car where police have reasonable belief suspect is dangerous and may gain control of weapons), and *Commonwealth v. Morris*, 644 A.2d 721, 724 n.3 (Pa. 1994) (adopting *Long* for purposes of Article I, Section 8 of Pennsylvania Constitution). Alternatively, the Commonwealth insists the gun was properly seized pursuant to the plain view exception. It posits that under *Commonwealth v. McCree*, 924 A.2d 621 (Pa. 2007) (opinion announcing judgment of court), when a police officer, after lawfully stopping an ordinary car in a public place, unexpectedly observes contraband in plain view that the officer quickly retrieves from an exposed area of the car without causing any damage to property, the state constitution is not violated. The Commonwealth submits *Alexander* did not overrule *McCree*, and urges the Court not to do so here. It identifies four reasons for preserving *McCree*: *stare decisis*;

the logic of *Alexander*; case law from other jurisdictions; and policy considerations. The policy concerns noted by the Commonwealth include the state of the law at the time of the seizure allowing warrantless car searches based on probable cause alone under *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (opinion announcing judgment of court) (adopting federal automobile exception to warrant requirement which requires only probable cause to search car and not exigent circumstances),[3] the challenges and delay associated with obtaining a warrant, and the difficulties associated with safeguarding a car while a warrant is obtained.

*Amici curiae* the Attorney General of Pennsylvania and the Pennsylvania District Attorneys Association also advocate for affirmance. *Amici* contend the unexpected discovery of a gun during a lawful traffic stop creates exigent circumstances. They submit the exigency does not end until both the suspect and the gun are secure because the suspect might have to be freed absent grounds for arrest, or he might escape from restraint. Given the exigent circumstances in this case, and the clear and undisputed presence of probable cause, *amici* argue the police had a lawful right of access to the gun under *Alexander* and the plain view exception.

In reply, Saunders insists the degree of the police entry into the car is irrelevant. He contends *amici*'s argument that the sudden appearance of a firearm during a traffic stop always amounts to exigent circumstances proposes a *per se* rule for exigency in contravention of *Alexander*. He submits Officer Ibbotson did not testify to a belief that Saunders was dangerous or might gain control of the gun, and the officer's body-worn camera showed he was cooperative with the officers. Additionally, Saunders claims he was placed under arrest, and thus there was no need to prevent his access to the gun

---

[3] *Alexander*, which overruled *Gary*, was not decided until December 22, 2020, more than one month after the challenged seizure here.

upon his return. He asserts consideration of caselaw from other jurisdictions is not appropriate because he is not seeking expansion of a state constitutional right but rather the straightforward application of the automobile exception under *Alexander* and Pennsylvania law. Saunders emphasizes obtaining a warrant should be the default rule for plain view car searches and seizures, to protect against both police misjudgments about an object's incriminating nature as well as police searches of areas of cars they would not otherwise be able to access.

"[T]he Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures." *Commonwealth v. Jones-Williams*, 279 A.3d 508, 515 (Pa. 2022).[4] "Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures." *Commonwealth v. Holzer*, 389 A.2d 101, 106 n.6 (Pa. 1978). "A search or seizure conducted without a warrant 'is presumptively unreasonable . . . subject to a few specifically established, well-delineated exceptions.'" *Interest of T.W.*, 261 A.3d 409, 416 (Pa. 2021), *quoting Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008). "These exceptions include, *inter alia*, exigent circumstances,

---

[4] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

US CONST. amend. IV. Article I, Section 8 similarly provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA CONST. art. I, §8.

the plain view exception, searches incident to arrest, consent searches, and automobile searches." *Wilmer*, 194 A.3d at 568 (cleaned up).

The plain view doctrine is "wholly applicable to . . . seizure issues under both the Fourth Amendment and Article I, Section 8." *Commonwealth v. Jones*, 988 A.2d 649, 656 (Pa. 2010). Under the plain view doctrine, the police may effectuate a warrantless seizure of an item if: (1) the police view the item from a lawful vantage point; (2) the incriminating nature of the item is immediately apparent; and (3) the police have a lawful right of access to the item. *See Commonwealth v. McCullum*, 602 A.2d 313, 320 (Pa. 1992); *see also McCree*, 924 A.2d at 625; *Commonwealth v. Graham*, 721 A.2d 1075, 1079 (Pa. 1998) (opinion announcing judgment of court).[5]

Here, it is undisputed the first two prongs of the plain view test are satisfied. *See* Saunders's Brief at 9 ("Only the application of the third prong, lawful right of access, is addressed to the Court here."). Indeed, it is not debatable Officer Ibbotson viewed the gun from a lawful vantage point. Following a lawful traffic stop, the officer was lawfully standing outside of the car on a public street when he observed the gun in plain view under the driver's seat. *See, e.g.*, Wayne R. LaFave, 3 Search and Seizure: A Treatise on The Fourth Amendment, § 7.5(a) (6th Ed.) (where a "vehicle is parked on a public

---

[5] This Court has also described the plain view doctrine as consisting of four prongs. *See Jones*, 988 A.2d at 656 ("This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself."). The immediately apparent prong of this formulation subsumes plain view. *See McCullum*, 602 A.2d at 320 ("[N]ot only must the item be in plain view, its incriminating character must also be immediately apparent."), *quoting Horton v. California*, 496 U.S. 128, 136 (1990). In any event, the parties refer to a three-prong test. *See* Saunders's Brief at 9; Commonwealth's Brief at 12. Accordingly, we too employ the three-prong formulation.

street or parking lot, then there is no doubt but that the officer may stand by and look into the vehicle just as any member of the public might").

Moreover, it is clear from the record that the incriminating nature of the gun was immediately apparent to Officer Ibbotson. The immediately apparent requirement is "coextensive with probable cause." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1163 (Pa. 2000); *see also Commonwealth v. Ellis*, 662 A.2d 1043, 1049 (Pa. 1995) ("[I]t must be immediately apparent to the viewer that the object observed is incriminating evidence. In other words, the observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence."). There was plainly probable cause at the time of the seizure, as Saunders concedes. *See* Saunders's Reply Brief at 16 ("Appellant concedes . . . probable cause existed in this case."). Probable cause exists "where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021), *quoting Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007). Probable cause is a "practical, non-technical concept" that is "evaluated under a traditional totality-of-the-circumstances test." *Id.* Officer Ibbotson lawfully stopped Saunders for multiple traffic violations in Philadelphia. The neighborhood was violent, with a lot of shootings. Saunders lied to the officer that he did not have a weapon and furtively attempted to conceal a gun under his seat. The officer saw what he was very certain was a gun under Saunders's seat. Saunders admitted he did not have a license for the gun. At a minimum, the totality of these circumstances established probable cause to believe Saunders was in violation of two provisions of the Uniform Firearms Act: 18 Pa.C.S. §6106(a) (prohibiting carrying of firearm in vehicle without license), and 18 Pa.C.S. §6108 (prohibiting carrying of firearm on public streets of Philadelphia without license).

In *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), this Court held: "[u]nless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." *Id.* at 937. Here, Officer Ibbotson in fact had prior knowledge Saunders was not permitted to a carry a gun in public based on Saunders's own admission, and in any event, Saunders also suspiciously lied about the weapon and attempted to hide it. There was ample probable cause on these facts, and thus the second prong of the plain view standard is established.

Finally, we hold the police had a lawful right of access to the gun under *McCree*.[6] In that case, the police observed McCree engage in a suspected drug deal inside a parked car. When an officer approached the car, he saw McCree, who was sitting in the driver's seat, shove a pill bottle under his seat cushion. The officer asked McCree to exit the car and then recovered the pill bottle, which contained Xanax. Thereafter, the officer saw two more pill bottles in the pocket of the open driver's-side door, which he also recovered. These pill bottles contained OxyContin and Percocet. McCree moved to suppress the drugs under the Pennsylvania and United States Constitutions. The trial court and the Superior Court ruled the pill bottles were lawfully seized under the plain view exception to the warrant requirement. This Court "granted allowance of appeal to clarify the

---

[6] If Saunders's suppression challenge were premised on the Fourth Amendment only, rather than both the federal and state constitutions, there would be at least two additional grounds for lawful access to the firearm: the federal automobile exception, and *Arizona v. Gant*, 556 U.S. 332, 351 (2009) ("Police may search a vehicle incident to a recent occupant's arrest . . . if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

standard for the plain view exception to the warrant requirement." *McCree*, 924 A.2d at 623.

The lead opinion in *McCree*, which was authored by Justice Eakin and joined by Justices Saylor and Fitzgerald, clarified that "under both the Fourth Amendment and Article I, §8, the plain view exception to the warrant requirement requires a determination of whether the police have a lawful right of access to the object seen in plain view." *Id.* at 628. Regarding the lawful-right-of-access prong, the lead opinion rejected the Commonwealth's argument to "adopt the federal automobile exception under Article I, §8." *Id.* at 629. It insisted the Court had previously rejected "the full federal automobile exception under Article I, §8" in *Holzer*, and it "decline[d] to overrule that long-standing precedent today, especially because that issue is not specifically before us, but ancillary to the issue we are resolving." *Id.* at 629-30.

While rejecting the federal automobile exception for purposes of the Pennsylvania Constitution, the lead opinion nonetheless held the Court had "adopted a limited automobile exception under Article I, §8." *Id.* at 630. Explicating the "limited automobile exception," it observed:

> We have allowed warrantless seizures "where police do not have advance knowledge that 'a particular vehicle carrying evidence of crime would be parked in a particular locale, . . . the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper.'" *Commonwealth v. Rodriguez*, 585 A.2d 988, 991 (Pa. 1991) (*citing* [*Commonwealth v.*] *Baker*, [541 A.2d 1381, 1383 (Pa. 1988)]). Conversely, when the police have ample advance information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, a warrant has been held to be required before the automobile may be searched. *Commonwealth v. Ionata*, 544 A.2d 917, 920-21 (Pa. 1988).

*Id.* (emphasis omitted).

Turning to application of the three-part plain view doctrine test, the *McCree* lead opinion determined each of the prongs was met. Pertinently, with respect to the lawful-right-of-access prong, it held:

> Finally, even without [the officer's] observation of the pill bottles, the remaining information above created probable cause to search the interior of the [car] for evidence of a drug sale. Since there was no advance[] warning that [McCree] or his [car] would be the target of a police investigation, the limited automobile exception applies here. Thus, [the officer] lawfully accessed the interior of [the car] under this exception, and while conducting a search, seized all three pill bottles. In sum, access to the [car] was authorized by the limited automobile exception[.]

*Id.* at 631. Accordingly, the lead opinion concluded "seizure of the pill bottles was authorized by the plain view exception." *Id.*

Justice Castille issued a concurring opinion in *McCree* joining the lead opinion "with the exception of its discussion of [*Holzer*] and the status and contours of the 'automobile exception' to the warrant requirement under Article I, Section 8 of the Pennsylvania Constitution." *Id.* at 634 (Castille, J., concurring); *see also id.* at 635 ("I concur in the Majority Opinion respecting the automobile exception, and I join it in all other respects."). Justice Castille explained:

> It is enough to state, for present purposes, that: (1) if this Court were to squarely face the question of what is demanded by Article I, Section 8 respecting automobile searches, I remain inclined to hold that our approach should be coextensive with the federal approach under the Fourth Amendment; and (2) failing that square joinder of the issue, it is my view that this Court's existing Article I, Section 8 *holdings* in this area . . . at most suggest that, if Article I, Section 8 requires an exigency to justify a probable cause-based warrantless entry of a vehicle (probable cause is the only federal requirement), all that is required is that the probable cause arose unexpectedly, *i.e.*, in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose. . . .
>
> In this case, probable cause respecting the vehicle did arise unexpectedly as police were engaged in an investigation of an unfolding retail illegal drug operation. Moreover, in such circumstances, it was not reasonably practicable to expect police to secure a warrant prior to searching the vehicle. And, moreover, there is no reason to believe that police

manipulated the circumstances in order to subvert the warrant requirement. In my view, then, even under the most expansive reading of this Court's Article I, Section 8 precedent, the automobile search here, which was supported by probable cause and an exigency beyond the mobility of the vehicle, was lawful.

*McCree*, 924 A.2d at 635 (quotation marks, citations, and footnote omitted).[7]

Although *McCree* was a plurality decision, this does not mean it lacks precedential weight. This Court has adopted the rule of *Marks v. United States*, 430 U.S. 188 (1977). *See Alexander*, 243 A.3d at 197 ("We apply the *Marks* rule."). Under the *Marks* rule, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [four] Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[] on the narrowest grounds[.]" *Marks*, 430 U.S. at 193, *quoting Gregg v. Georgia,* 428 U.S. 153, 169 n. 15*,* (1976) (opinion of Stewart, Powell, and Stevens, JJ.). This Court has employed the *Marks* rule "in discerning binding holdings in decisions that facially may appear to be non-precedential." *In re Avery*, 286 A.3d 1217, 1229 (Pa. 2022) (collecting cases). In order for the *Marks* rule to apply, "a majority of the Court must be in agreement on the concept

---

[7] Chief Justice Cappy issued a separate concurring opinion, which was joined by Justices Baer and Baldwin. He joined in the lead opinion's clarification that the plain view doctrine includes the requirement of a lawful right of access to the item in plain view. *See McCree*, 924 A.2d at 632 (Cappy, C.J., concurring). He disagreed, however, with the lead opinion's application of this prong to McCree's case. He noted "McCree was only charged and convicted of possession with intent to deliver the Xanax which was found in the . . . pill bottle that McCree had secreted under his seat cushion. . . . Thus, the propriety of the seizure of the pill jars from the driver side door pocket is not at issue in this appeal." *Id.* at 632 n.2. Regarding the seizure of the pill bottle under the seat cushion, he expressed the view it was "unnecessary to delve into the contours of the automobile exception under Article I, §8, as the parameters of that exception to the warrant requirement" were "not directly before" the Court. *Id.* at 634. Instead, he would have found the lawful access prong to be "satisfied by the search incident to arrest exception to the warrant requirement." *Id.*; *but see Commonwealth v. White*, 669 A.2d 896, 902 (Pa. 1995) ("We disagree . . . with [the] Superior Court's determination that White's vehicle was permissibly searched because White was under arrest. . . . [T]here is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody[.]").

which is to be deemed the holding."  *Id.*, *quoting Pap's A.M. v. City of Erie*, 719 A.2d 273, 278 (Pa. 1998), *rev'd sub nom. City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000).

Here, the three-Justice lead opinion in *McCree* determined that because there was no advance warning of probable cause, Pennsylvania's automobile exception was satisfied, and also that the police lawfully accessed the interior of the car in satisfaction of the third prong of the plain view doctrine.  *See McCree*, 924 A.2d at 631 ("Since there was no advance[] warning that [McCree] or his [car] would be the target of a police investigation, the limited automobile exception applies here.  Thus, [the police] lawfully accessed the interior of [the car] under this exception, and while conducting a search, seized all three pill bottles.").  Justice Castille's concurrence expressed his preference for adopting the broader federal automobile exception under the Pennsylvania Constitution.  *See id.* at 635 ("[I]f this Court were to squarely face the question of what is demanded by Article I, Section 8 respecting automobile searches, I remain inclined to hold that our approach should be coextensive with the federal approach under the Fourth Amendment[.]").  That is, he argued probable cause alone, irrespective of whether it arose unexpectedly, should suffice to authorize entry into a car.  However, Justice Castille also clearly agreed with the lead opinion that unexpected probable cause permits lawful access to a car.  *See id.* ("[I]f Article I, Section 8 requires an exigency to justify a probable cause-based warrantless entry of a vehicle (probable cause is the only federal requirement), all that is required is that the probable cause arose unexpectedly, *i.e.*, in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose. . . . In this case, probable cause respecting the vehicle did arise unexpectedly as police were engaged in an investigation of an unfolding retail illegal drug operation.") (internal quotation marks and citation omitted).

Thus, while Justice Castille would have gone further than the lead opinion to find lawful access based simply on probable cause, four Justices in *McCree* agreed that the unexpected development of probable cause establishes a lawful right of access to the interior of a car under the third prong of the plain view doctrine. This position of a majority of the *McCree* Court constitutes the narrowest grounds of agreement supporting the judgment. As such, pursuant to the *Marks* rule, this holding is precedential — a fact the Superior Court *en banc* correctly (and unanimously) recognized more than a decade ago. *See Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa. Super. 2011) (*en banc*) ("[W]e must conclude that Justice Castille's concurrence in *McCree* narrowly inures the plurality's [opinion announcing judgment of court] with precedential value regarding automobile searches and seizures in the following limited respect: where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question."); *see generally* Linda Novak, Note, *The Precedential Value of Supreme Court Plurality Decisions*, 80 Colum. L. Rev. 756, 763 (1980) ("It is easy to isolate the narrowest ground in those situations where the plurality relies on rationale A in support of the result, and the concurrence clearly agrees on the applicability of that rationale, but also goes a step further and espouses rationale B as well. In such cases the plurality rationale may fairly be regarded as the narrowest ground embodying the reasoning of a majority of the Court, and that rationale should be binding on lower courts for future cases."), *quoted in Commonwealth v. McClelland*, 233 A.3d 717, 731 n.7 (Pa. 2020) (brackets omitted).[8]

---

[8] The unanimous *en banc* decision in *Brown* was authored by then-Judge, now-Justice Donohue. Although Justice Donohue has now changed her view and asserts her decision in *Brown* was "wrong[,]" we respectfully submit she got it right the first time. Dissenting Opinion at 18.

*Alexander* did not overrule *McCree*. In *Alexander*, the police stopped a car driven by Alexander and arrested him for smoking marijuana. The police then searched the interior of his car for more marijuana. The officers found a metal box behind the driver's seat, which they opened with a key from Alexander's keychain. The box contained bundles of heroin. Following the denial of Alexander's motion to suppress the drugs, and the Superior Court's affirmance thereof, this Court granted allowance of appeal solely to consider whether to "overrule or limit" *Gary*, which, as noted, adopted the federal automobile exception for purposes of Article I, Section 8. *Alexander*, 243 A.3d at 180. The Court decided to overrule *Gary* and "return to the pre-*Gary* application of our limited automobile exception under Article I, Section 8 of our Constitution, pursuant to which warrantless vehicle searches require both probable cause and exigent circumstances; 'one without the other is insufficient.'" *Id.* at 207, *quoting Commonwealth v. Luv*, 735 A.2d 87, 93 (Pa. 1999). The *Alexander* Court also remarked that the determination of exigent circumstances "is not amenable to *per se* rules and requires a consideration of the totality of the circumstances." *Id.* at 208.

While *Alexander* overruled *Gary*, it did not also reverse *McCree sub silentio*. *Alexander* did not involve a plain view seizure from a car as in *McCree*. To the contrary, the police in *Alexander* conducted a full-blown search of the inside of Alexander's vehicle, including opening a locked container inside the car. Unsurprisingly then, *Alexander* did not purport to apply the plain view doctrine, much less change the law in this area. While *Alexander* briefly discussed *McCree*, the Court confined its discussion to *McCree*'s consideration of the automobile exception, and did not address *McCree*'s plain view holding. *See id.* at 185 ("In [*McCree*], a case involving an automobile search and application of the plain view exception, this Court described, for the first time, Pennsylvania law as recognizing a 'limited' automobile exception. Justice Castille

authored a concurring opinion in *McCree* reiterating his view that any Pennsylvania limitation on the automobile exception was confined to cases in which probable cause arose unexpectedly."). *Alexander* addressed the automobile exception to the warrant requirement, not the distinct plain view exception (or any other exception, for that matter). *See, e.g.*, *McMahon*, 280 A.3d at 1073 ("*Alexander* addresses the automobile exception to the warrant requirement, not the plain view exception."); *Commonwealth v. Thompson*, 289 A.3d 1104, 1109 (Pa. Super. 2023) ("*Alexander* does not explicitly address other exceptions to the warrant requirement."). Indeed, one of the arguments made in *Alexander* in support of overruling *Gary* was that the law of plain view seizures would remain unchanged in the wake of *Gary*'s demise. *See Alexander*, 243 A.3d at 192 ("Alexander adds a number of policy considerations in support of overruling *Gary*, with the primary consideration being the number of other exceptions to the warrant requirement often present in automobile cases that remain available, including voluntary consent, exigent circumstances that make it too difficult to obtain a warrant, and **plain view**.") (emphasis added). Our decision regarding the automobile exception in *Alexander* did not constitute a stealth reversal of the plain view holding of *McCree*.

Saunders nonetheless argues "*Alexander*, with its warrant requirement for an intrusion into a car, dramatically changed the application of the plain view doctrine in Pennsylvania." Saunders's Brief at 6-7. He elaborates that the "narrowest ground of agreement in *McCree*" was the language in the lead opinion providing that "'the limited automobile exception under Article I, §8 may, depending on the circumstances of each case, serve as the basis of the lawful right to access an object seen in plain view inside a vehicle[,]'" and the "limited automobile exception" was "unquestionably addressed in *Alexander*." *Id.* at 18, 23, *quoting McCree*, 924 A.2d at 631 (emphasis omitted). But the language quoted by Saunders does not represent the precedential holding arising from

*McCree* pursuant to *Marks*. Under the *Marks* rule, the binding position of a fragmented court must be a "rationale explaining the result[,]" *Marks*, 430 U.S. at 193, and "a majority of the Court must be in agreement on the concept[,]" *In re Avery*, 286 A.3d at 1228. The formulation foregrounded by Saunders does not satisfy either criteria. The abstract and conditional concept that the automobile exception may establish lawful access to a car does not explain why there was a legal right to access under the particular facts of the *McCree* case. From the broad and contingent pronouncement that the police might possibly be able to access a car under the automobile exception, it does not necessarily follow that the specific intrusion in *McCree* was lawful. The language highlighted by Saunders is a general statement of law, not a rationale explaining the result of *McCree*. Moreover, Justice Castille expressly refused to agree to the lead opinion's "explication and application of the automobile exception[,]" *McCree*, 924 A.2d at 634, leaving the language quoted by Saunders without the agreement of a four-Justice majority. Furthermore, "[t]he [United States] Supreme Court . . . has generally regarded the narrowest ground as the rationale offered in support of the result that would affect or control the fewest cases in the future." *United States v. Martino*, 664 F.2d 860, 873 (2d Cir. 1981), *quoting* Novak, *supra*, at 764. Saunders's preferred formulation references a "limited automobile exception under Article I, §8" and thus implicates all cars searches in the Commonwealth. In this way, it is not narrowly confined to plain view seizures from automobiles. Notwithstanding Saunders's arguments otherwise, the narrowest majority position justifying the result in *McCree*, and thus the holding of *McCree* enjoying precedential status under *Marks*, is that the unexpected development of probable cause permits lawful access to a car under the final prong of the plain view doctrine.[9]

---

[9] The dissent argues "[t]here was no overlap on the concept of the limited automobile exception between the [plurality] and Justice Castille's concurrence in *McCree* that can support application of the *Marks* rule." Dissenting Opinion at 20. We agree there was (continued…)

The continued vitality of *McCree* post-*Alexander* means there are different standards for access to a car under the plain view exception and Pennsylvania's automobile exception. Put simply, under *McCree*, lawful access to seize an item from a car under the third prong of the plain view doctrine requires the unexpected development of probable cause, whereas, pursuant to *Alexander*, the automobile exception requires probable cause and exigent circumstances.

The existence of a different standard for plain view seizures is appropriate. This is because there is a distinction between "the limited intrusion of the seizure of evidence in plain view from the greater intrusion of an automobile search." *McMahon*, 280 A.3d at 1073; *see generally* LaFave, *supra*, at §7.2 (relevant question "is what kinds of vehicle cases involve a sufficiently high degree of intrusion into privacy interests that before-the-fact judicial control is essential"). By definition, a plain view seizure from a car does not involve confiscation of an object shielded from public view. As such, as a general matter, "the seizure of an object in plain view does not involve an intrusion on privacy." *Horton*, 496 U.S. at 141. *See Commonwealth v. Petroll*, 738 A.2d 993, 999 (Pa. 1999) ("There can be no reasonable expectation of privacy in an object that is in plain view."); *Gary*, 91 A.3d at 150 (Todd, J., dissenting) ("When one rides in an automobile, he accepts that he himself and those items left uncovered on the dashboard or seat are no longer 'private.'")

---

not a majority agreement in *McCree* concerning the contours of the automobile exception. But this is irrelevant to our disposition. Notwithstanding the dissent's mistaken claims to the contrary, *see id.* at 1, 28, we are not adopting or applying the "limited automobile exception" in this case. Rather, we are construing the distinct plain view exception. As discussed, as to this distinct issue, a majority consensus clearly did emerge from *McCree*. Four Justices plainly agreed that unexpected probable cause establishes a lawful right of access under the third prong of the plain view exception. Similarly, because the binding holding of *McCree* simply sets the standard for lawful access to a car under the plain view doctrine, and does not define exigent circumstances under Pennsylvania's automobile exception, it does not create a "*per se* exigency exception" "at odds with *Alexander*'s core holding that requires a case-by-case, totality-of-the-circumstances analysis of whether an exigency exists[.]" *Id.* at 6, 22.

(citation omitted); *see also Alexander*, 243 A.3d at 202 ("[W]e adopt Justice Todd's compelling analysis as our own.").

Of course, we recognize Saunders's principal complaint is not that police intruded upon any protected privacy interest he held in the stolen gun that was observed in plain view; rather, it's that his privacy interest in the vehicle was supposedly invaded when Officer Ibbotson momentarily trespassed into it to seize the gun. *See* Saunders's Brief at 10 ("A plain-view seizure thus cannot be justified it if is effectuated by unlawful trespass."), *quoting Collins v. Virginia*, 138 S.Ct. 1663, 1672 (2018); *see also Alexander*, 243 A.3d at 202 (explaining "possessory and privacy interests can be different with respect to the vehicle itself versus items within that vehicle"). Again though, by its very nature, a plain view seizure from a car does not involve police intrusion into "features that let [car] users store items away from public view such as trunks, glove boxes, and internal storage compartments." *Alexander*, 243 A.3d at 192. Hence, in the plain view **seizure** context, the police intrusion into the car, and the attendant invasion of the defendant's reasonable expectation of privacy in the vehicle, can never approach that of a full-scale car **search**.[10] Rather, the full extent of the police entry into a car in the circumstance of a plain view seizure will always be limited to items and areas already fully exposed to public view. So the potential invasion of privacy and potential intrusion by police are necessarily less

---

[10] We reject Saunders's claim that "[t]he degree of intrusion is irrelevant." Saunders's Reply Brief at 2. The degree of intrusion bears on the degree of invasion of privacy. Again, "[p]rotection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures" under our state and federal Constitutions. *Holzer*, 389 A.2d at 102 n.6. Moreover, the degree of intrusion implicates the reasonableness of the police action. *See Commonwealth v. Worthy*, 957 A.2d 720, 728 (Pa. 2008) (Castille, J., concurring) ("The central command of the Fourth Amendment, and Article I, Section 8, is reasonableness."). An incursion narrowly limited to addressing law enforcement needs is more likely to be reasonable than one which is broader than necessary.

substantial in the context of a plain view seizure than they are in the context of a car search. These distinctions justify distinct standards.

Indeed, the facts of this case prove the point. The intrusion by Officer Ibbotson was decidedly minimal. From outside of the car, he merely reached a few inches into the car through the open driver's-side door directly to where the gun was located on the floor by the driver's seat and immediately seized the weapon. This was the full extent of the intrusion. No force or damage was required to gain entry; the door was open. No more than the officer's left hand and wrist actually entered the car. He stopped with confiscation of the gun. He did not probe anywhere else in the car, much less go into the glove box, any containers in the vehicle, or the trunk. It was all over in a matter of a few seconds. In short, the police intrusion was narrowly circumscribed to address and neutralize the unsecured gun on the floor of the open car. At most, it resulted in a *de minimis* intrusion on Saunders's expectation of privacy in the vehicle.[11]

---

[11] The dissent insists "[a] seizure is a seizure and a violation of Saunders' possessory interest cannot be minimized simply because his privacy interest was negligible[.]" Dissenting Opinion at 27. Any possessory interest Saunders may have had in the admittedly unlicensed and stolen gun in his wife's car was tenuous at best. *See United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010) (plain view seizure "is justified by the fact that any ownership or possessory interest in the item is defeated by its illegality"); *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998) ("[T]here is no possessory interest in contraband."). To the extent Officer Ibbotson intruded at all on Saunders's possessory interest when the officer seized the illegal gun, the intrusion was no less negligible than the *de minimis* intrusion on his privacy interest. *See United States v. Place*, 462 U.S. 696, 705 (1983) ("The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent."). The dissent also emphasizes that "[a]fter seizing the weapon and placing it in the police car, Officer Ibbotson returned to Saunders'[s] car and rummaged through it for several minutes." Dissenting Opinion at 27 n.21. However, the only police conduct challenged by Saunders, and thus the only police conduct in question on appeal, is the officer's very brief act of reaching inches into the car from the street to seize the firearm in plain view. *See* Saunders's Brief at 6 (arguing it was "constitutionally impermissible" for "the police [to] simply enter[] the car and seize[] the contraband"); Commonwealth's Brief at 8 ("Defendant does not challenge the legality of the traffic stop or any other action taken by the police apart from seizing the gun.").

Importantly, while the *McCree* standard is appropriately less demanding than the *Alexander* standard, it provides meaningful protection to drivers and car owners. The requirement of unexpected probable cause "guards against pretextual automobile stops." *Commonwealth v. Perry*, 798 A.2d 697, 718 n.8 (Pa. 2002) (Castille, J., concurring). If the police have advance knowledge a car may contain contraband or evidence of a crime, they cannot stop the vehicle in the hope of gaining plain view access to the item; they have to get a warrant. Similarly, if the police have prior information a parked car may contain a criminal item, they cannot simply approach the car and invoke the plain view exception to the warrant requirement. Finally, it bears emphasis that the reach of the *McCree* holding, like the applicability of *Alexander*, is limited to the facts which gave rise to it: a plain view seizure from a car. *See Maloney v. Valley Medical Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009) ("[D]ecisions are to be read against their facts[.]"). It is in this circumstance, and this circumstance alone, that the *McCree* standard applies. In the context of a car search on the other hand, the *Alexander* standard controls.[12]

Having concluded we are bound by the common holding of a majority of this Court in *McCree* that the unexpected development of probable cause establishes a lawful right of access to seize an item in a car under the third prong of the plain view doctrine, it remains for us to apply this holding to the facts of this case. Presently, the police had no knowledge prior to stopping Saunders for unrelated traffic violations that he had an unlicensed gun in his car. Rather, the probable cause arose unexpectedly on the street following the traffic stop. The *McCree* standard is readily satisfied on these facts, so the

---

[12] The dissent contends "[t]he use of the first two prongs of the plain view doctrine to fully satisfy the third renders the third prong meaningless[.]" Dissenting Opinion at 26. Neither of the first two prongs require the unexpected development of probable cause. The *McCree* standard is not meaningless.

seizure of the gun was lawful under the plain view exception to the warrant requirement.[13]

Accordingly, we affirm the Superior Court's order affirming the denial of suppression.[14]

Justices Mundy, Brobson and McCaffery join the opinion.

Chief Justice Todd files a concurring opinion.

Justice Donohue files a dissenting opinion in which Justice Wecht joins.

---

[13] The dissent raises the hypothetical of "contraband observed through a window in plain view in an individual's home[.]" Dissenting Opinion at 23 n.16. Though we offer no opinion on facts not before us, we note that *Alexander*, via its "adopt[ion]" of Justice Todd's dissent in *Gary*, *Alexander* 243 A.3d at 202, "acknowledge[d] that our Court has previously stated that the expectation of privacy people possess in an automobile is not identical to that which they possess with respect to the interior of their home[.]" *Gary*, 91 A.3d at 150 (Todd, J., dissenting).

[14] In light of our disposition, we do not reach the Commonwealth's alternate argument that the seizure of the gun was permissible under *Long* and *Morris*.